71588. ALL-GEORGIA DEVELOPMENT, INC. v. KADIS.
(341 SE2d 885)

McMurray, Presiding Judge.

Plaintiff purchased a house from defendant in December 1981. The house was built by defendant, a registered builder in the Home Owners Warranty program, and it was covered by Home Owners Warranty insurance.

In early 1982 plaintiff notified defendant that he was experiencing drainage and erosion problems. In this regard, plaintiff complained that water was pooling in the crawl space under the house and that the front lawn was eroding. Initially, defendant was slow to respond to plaintiff's complaints. After additional prompting, however, defendant took various corrective measures throughout 1983 which consisted of making a wale, grading, seeding and sodding the lawn.

Plaintiff remained unsatisfied and in early 1983 he filed an application with the Home Owners Warranty Corporation (HOW) seeking warranty performance. HOW appointed a "dispute settler" to resolve the differences between the parties. An agreement was reached concerning the performance of additional work by defendant and pursuant to the agreement, defendant installed a french drain in the ground and a french drain in the crawl space. The drain in the crawl space was placed at the westerly end of the house. Additionally, defendant took other measures (e.g., it put more ventilation in the crawl space and it installed plastic water barriers in the crawl space) which were not required by the agreement. This work was completed in the summer of 1983.

Thereafter, in September 1983 plaintiff began construction of an additional bathroom. To construct the addition, plaintiff excavated the crawl space along the easterly end of the house. The addition was completed in early 1984.

In the meantime, in November 1983, plaintiff's attorney informed HOW that defendant had completed the work which the parties agreed upon. With regard to the effectiveness of the measures taken by defendant, plaintiff's attorney wrote: "One of the defects covered by the agreement was the improper drainage of the building site . . . After he inspected the site, your dispute settler [James Rollins] told me that he felt that the installation of one drainage ditch filled with gravel and drain tile [would rectify the situation in the crawl space]. He stated further . . . that if this was not adequate to alleviate the site drainage problem, another ditch would be needed across the front

of the house . . . There has been no extended rainy period since the installation of the initial drainage ditch; therefore, we do not know whether this is going to accomplish the required drainage. We feel that we must wait until the winter rains before we will know whether the second ditch will be needed."

Beginning in December 1983 plaintiff's drainage problems returned. Defendant refused to take further action and plaintiff commenced this lawsuit. In his complaint, as amended, plaintiff alleged he was damaged because defendant breached its warranty to construct the house "in a fit and workmanlike manner in accordance with established and accepted standards of professional care in the community." The case was tried by a jury and a $15,600 verdict was returned for plaintiff. This amount consisted of $8,320 general damages and $7,280 attorney fees. Judgment was entered upon the verdict and this appeal followed. *Held*:

1. Plaintiff moved to dismiss the appeal on the ground that defendant failed to include the jurisdictional statement in the enumeration of errors. The failure to include the jurisdictional statement in the enumeration of errors does not afford a basis for dismissal of the appeal. *O'Kelley v. Hayes*, 132 Ga. App. 134 (207 SE2d 641). The motion to dismiss the appeal is denied.

2. In its first enumeration of error, defendant contends the trial court erred in failing to grant its motion to strike certain exhibits which were attached to the complaint. The exhibits consisted of a series of letters and "request for service" forms which plaintiff sent to defendant in 1982. They set forth plaintiff's grievances about the drainage problems; additionally, they contained complaints concerning various other items (e.g., a lighting fixture and a ceiling fan) which had no bearing upon the lawsuit. The complaint (and the attached exhibits) was sent out with the jury when deliberations commenced. The trial judge instructed the jury that the pleadings were not evidence and were to be considered only as the contentions of the parties.

The motion to strike the exhibits was made upon the grounds that they were redundant, immaterial, impertinent and scandalous. Additionally, defendant asserted the exhibits constituted evidence which defendant did not have an opportunity to challenge. We cannot say the trial court abused its discretion in denying defendant's motion to strike.

"Section 12 (f) of the Civil Practice Act (Code Ann. § 81A-112 (f) [OCGA § 9-11-12 (f)]) provides: 'Upon motion made by a party within 30 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' This Section for all practical pur-

poses, in a decision of this case, is the same as Section 12 (f) of the Federal Rules of Civil Procedure. We may look to this rule and the Federal decisions thereunder, therefore, to aid us in determining the purpose [or] meaning of this rule." *Northwestern Mut. Life Ins. Co. v. McGivern*, 132 Ga. App. 297, 301 (3) (208 SE2d 258).

Federal decisions make it clear that "[t]he court possesses considerable discretion in disposing of a motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because motions to strike on these grounds are not favored, often being considered 'time wasters,' they usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. Thus, a motion to strike frequently has been denied when no prejudice could result from the challenged allegations, even though the matter literally is within the categories set forth in Rule 12 (f). This has been true, for example, if the pleadings will be withheld from the jury or if the jury is carefully instructed as to the weight to be given the pleadings." Wright & Miller, Fed. Practice & Procedure: Civil § 1382. In the case sub judice, the trial court fully explained the purpose of the pleadings. Thus, defendant could not have been harmed by the denial of the motion to strike. See *Gaskins v. McCranie Timber Co.*, 225 Ga. 280, 282 (2) (168 SE2d 311); *Hospital Auth. of Walker &c. Counties v. Smith*, 142 Ga. App. 284, 288 (7) (235 SE2d 562); *Northwestern Mut. Life Ins. Co. v. McGivern*, 132 Ga. App. 297, supra. Defendant's first enumeration of error is without merit.

3. (a) In its second enumeration of error, defendant contends the trial court erred in failing to grant defendant's motion for a directed verdict on the ground that there had been an accord and satisfaction of the dispute. In this regard, defendant points out that the dispute settler, Rollins, negotiated an agreement between the parties; that the agreement called upon defendant to take certain measures in order to rectify the drainage problem; and that defendant did do the work agreed upon.

"Where an accord and satisfaction is executory, 'It is only complete when all is done that was to be done in satisfaction.' *Campbell Coal Co. v. Pano*, 51 Ga. App. 232, 234 (180 SE 139); *Redman v. Woods*, 42 Ga. App. 713 (157 SE 252). Here the evidence was in conflict as to whether defendant fully repaired the defects in plaintiff's [house]. Accordingly, it was a question for the jury as to whether defendant satisfied the accord. See *Dixie Belle Mills v. Specialty &c. Co.*, 217 Ga. 104, 111 (120 SE2d 771). The 'doctors of doubt' decided adversely to defendant on this issue." *Rebel Mobile Homes v. Smith*, 137 Ga. App. 496, 497 (1) (224 SE2d 483).

(b) Relying upon two HOW documents, defendant contends an accord and satisfaction was established as a matter of law. The docu-

ments are entitled: "Dispute Settlement Record" and "Acceptance of Decision."

The "Dispute Settlement Record" consists of two parts. The first part lists defects claimed by the owner. In the case sub judice, the relevant defects which were claimed by the plaintiff were "(1) IMPROPER DRAINAGE OF THE SITE" and "(2) LEAKS IN CRAWL SPACE RESULTING IN POOLING OF WATER IN CRAWL SPACE." "Yes" or "No" boxes appear alongside each claimed defect. The boxes are used by the dispute settler to reflect his decision as to whether or not the builder is responsible for the defect. Here, the dispute settler, James Rollins, decided that defendant was responsible for each defect. He signed this part of the "Dispute Settlement Record" on February 7, 1983. The second part of the "Dispute Settlement Record" sets forth the agreements reached by the homeowner and builder. In this respect, the document reads, in pertinent part: "(1) Builder will dig ditch fill with gravel & drain pipe to drain site. (2) Builder will install drain & fill ditch with gravel." This portion of the "Dispute Settlement Record" bears the signatures of defendant (by its president), on February 1, 1983, and plaintiff, on February 4, 1983.

The other document, the "Acceptance of Decision," was signed by plaintiff on February 4, 1983. In part this document provides: "IF YOU ACCEPT THE DISPUTE SETTLER'S DECISION, COMPLETE AND SIGN THIS FORM AND RETURN IT TO THE HOW REGIONAL OFFICE WITHIN 45 DAYS IN WHICH CASE THE BUILDER WILL BE BOUND TO PERFORM ACCORDING TO THE DECISION. IF YOU DO NOT COMPLETE THIS FORM AND RETURN IT WITHIN 45 DAYS, YOU WILL BE DEEMED TO HAVE REJECTED THE DECISION AND THE BUILDER WILL NOT BE OBLIGATED TO PERFORM IN ACCORDANCE WITH IT. I . . . having participated in EDS Meeting which resulted in the attached decision, do hereby accept the terms of said Decision exactly as rendered in full settlement of all claims presented at the meeting. It is my understanding that the builder named in the Decision, ALL-GA. DEV., INC., has agreed to perform the corrective work set forth."

"Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction of the former agreement, where it is so expressly agreed by the parties; and without such agreement, if the new promise is founded on a new consideration, the taking of it is a satisfaction of the former agreement." OCGA § 13-4-101.

Defendant contends the HOW documents amount to a satisfac-

tion of the original contract since plaintiff accepted the "Decision" in "full settlement of all claims." Plaintiff, on the other hand, asserts the HOW documents merely evidenced his willingness to abide by the decision of the dispute settler as to which party was responsible for the claimed defects. To bolster his assertion, plaintiff points to the terms of the HOW warranty which provide that the homeowner "must sign and deliver . . . a full release of all legal obligations" after the builder repairs the defect. Plaintiff asks: If the "HOW documents" constituted a "full settlement," why is it necessary to sign and deliver a release upon the completion of the work by the builder?

We agree with plaintiff. The settlement language contained in the HOW documents is unclear, at best. It cannot be said that they constitute an accord and satisfaction of plaintiff's claims as a matter of law. See generally *Hinely v. Barrow*, 169 Ga. App. 529, 530 (313 SE2d 739).

(c) "As a general rule, whether there is accord and satisfaction is a question for the jury. *Nauman v. McCoy*, 84 Ga. App. 131 (65 SE2d 853) (1951)." *Woodstock Rd. Investment Properties v. Lacy*, 149 Ga. App. 593, 594 (254 SE2d 910). This case does not present an exception to the rule. The trial court did not err in refusing to grant defendant's motion for directed verdict on the ground that there had been an accord and satisfaction of the dispute.

4. In its third enumeration of error, defendant contends the trial court erred in refusing to charge the jury concerning speculative or conjectural damages. This contention is without merit. The damages sought by plaintiff arose naturally, and according to the usual course of things, from the acts of defendant. They were not speculative, conjectural, or remote. Compare OCGA § 13-6-2 with OCGA § 13-6-8. See also OCGA § 51-12-9.

5. In its final enumeration of error, defendant contends the trial court erred in failing to grant defendant's motion for directed verdict with regard to the claim for litigation expenses. We disagree. "The jury may allow expenses of litigation including attorney fees where the defendant has acted in bad faith in the transaction out of which the cause of action arose. *Smith v. Milikin*, [247 Ga. 369 (276 SE2d 35)] supra at 371; *Ponce de Leon &c. v. DiGirolamo*, 238 Ga. 188, 190 (2) (232 SE2d 62) (1977)." *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 343 (319 SE2d 470). In the case sub judice, there was evidence that defendant had actual knowledge of the defective condition of the house; that defendant reasonably could have foreseen the damages which plaintiff sustained as a result of the defective condition; and that, nevertheless, defendant sold the house to plaintiff. This evidence amply authorized an award of expenses of litigation. *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 343, supra.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED FEBRUARY 7, 1986 —
REHEARING DENIED FEBRUARY 25, 1986 —

*William H. Larsen*, for appellant.
*James M. Wootan*, for appellee.