**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 7, 2017**

# In the Court of Appeals of Georgia

A17A1408.  ORTHO  SPORT  &  SPINE  PHYSICIANS  SE-054
    SAVANNAH, LLC v. CHAPPUIS et al.

SELF, Judge.

In this interlocutory appeal, Ortho Sport & Spine Physicians Savannah, LLC ("Ortho Savannah") appeals from orders granting James Chappuis, M.D., Orthopaedic & Spine Surgery of Atlanta, LLC ("Ortho Atlanta"), and Jordan Strudthoff's (collectively "appellees") motion to strike portions of Ortho Savannah's complaint and to dismiss Strudthoff as a defendant. For the reasons explained below, we affirm in part and reverse in part.

Ortho Savannah's complaint alleges that Dr. Chappuis and the principal of Ortho Savannah, Dr. Armin Oskouei, were previously partners in a medical practice and surgery center located in Atlanta, Georgia. After Dr. Chappuis allegedly

threatened to kill Dr. Oskouei and hired individuals to stalk Dr. Oskouei and his staff, their professional relationship ended, and litigation ensued that was ultimately settled.

Dr. Oskouei then established a new medical practice in Savannah, Georgia. Approximately one year later, Chappuis Properties, LLC, a company allegedly controlled by Dr. Chappuis, purchased the medical building in Savannah where Ortho Savannah leased space as one of only two tenants in the building. Around the same time, incidents began occurring that were "reminiscent of the harassing behavior which was well-documented and admitted" in the previous lawsuit. Ortho Savannah's complaint alleged that explicit racial messages appeared on Dr. Oskouei's windshield, "suspicious individuals" frequented its lobby, individuals masquerading as patients attempted to obtain information about its medical practice, individuals attempted to solicit its patients or advise them to use a different doctor, persons stalked and followed Dr. Oskouei, and Chappuis Properties refused to accept Ortho Savannah's lease payments from its previous landlord. Based upon fear for the safety of its staff and patients and the disruption of its business, Ortho Savannah vacated the property. When the remaining tenant in the building inquired about sub-leasing space from Ortho Savannah, the "Defendants refused, stating they fully intended to take over the space itself."

2

In short, the complaint alleges that the "Defendants have acted together in a systematic fashion with a deliberate attempt to destroy Ortho [] Savannah's business, as an end in and of itself, as well as for the pecuniary benefit of the Defendants." It asserted causes of action for civil conspiracy, alter-ego liability and piercing the corporate veil, breach of warranty of quiet enjoyment and constructive eviction, intentional infliction of emotional distress, trespass, invasion of privacy, slander per se, slander and oral defamation, tortious interference with a business relationship, and sought punitive damages against all defendants, as well as attorney fees and expenses of litigation under OCGA § 13-6-11.

The appellees subsequently moved to strike paragraphs 7, 19, 25, 27 and 31 of the complaint because they contain "scandalous statements" or "accusations" that do not add any probative value to the litigation. The trial court granted the motion with regard to paragraphs 7, 17-28, and 31-32, with no explanation of its reasoning. Strudthoff moved to dismiss the complaint against him on the ground that the complaint failed to allege any facts specific to him that would entitle Ortho Savannah to any relief sought. The trial court granted this motion in its entirety, also without explanation.

1. Ortho Savannah asserts that the trial court erred by dismissing the entirety of its complaint against Strudthoff at the preliminary pleading stage. We agree.

Under Georgia law,

> [a] motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation and punctuation omitted.) *State v. Singh*, 291 Ga. 525, 529 (3) (731 SE2d 649) (2012). To that end,

> minimum pleading requirements are found in OCGA § 9-11-8 (a) (2) (A), which requires that the complaint contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," and we have held that the touchstone is fair notice — "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."

(Citations omitted.) *Aetna Workers' Comp Access v. Coliseum Medical Center*, 322 Ga. App. 641, 651 (4) (746 SE2d 148) (2013). While "[a] trial court's ruling on a

4

motion to dismiss for failure to state a claim is subject to de novo review[,]" *Infinite Energy v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011), we "accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." *Bush v. Bank of N. Y. Mellon*, 313 Ga. App. 84, 89 (720 SE2d 370) (2011).

> Under this 'notice' theory of pleading, it is immaterial whether a pleading states 'conclusions' or 'facts'. . . . There are no prohibitions in the rules against pleading conclusions and, if pleaded, they may be considered in determining whether a complaint sufficiently states a claim for relief. It is immaterial whether an allegation is one of fact or conclusion if the complaint effectively states a claim for relief.

(Citations and punctuation omitted.) *Ledford v. Meyer*, 249 Ga. 407, 408-409 (2) (290 SE2d 908) (1982).

In this case, the complaint identified Strudthoff as a defendant and contained numerous allegations against the plural "Defendants." For example, it alleged: "Defendants have been doing whatever they can to disrupt Ortho [] Savannah's business"; "Defendants have acted together in a systematic fashion with a deliberate attempt to destroy Ortho [] Savannah's business, as an end in and of itself, as well as for the pecuniary benefit of the Defendants"; "Dr. Chappuis' and his co-Defendants'

5

actions are reminiscent of the harassing behavior which was well-documented [] in the Atlanta Litigation"; "Defendants have also harassed Plaintiff using business bullying"; "Defendants have refused to accept payment from Ortho [Savannah]'s previous landlord of the Savannah Property, despite repeated attempts to make payment"; and "Defendants" refused to allow a sublease of Ortho Savannah's space "stating they fully intended to take over the space." The complaint also asserted causes of action against the plural defendants for all causes of action other than alter-ego liability and piercing the corporate veil. With regard to conspiracy, it expressly identified Strudthoff as a co-conspirator who "agreed to do the torts complained of herein, or else to do some lawful act by methods which constitute a tort."

Having reviewed these allegations, we affirm the trial court's dismissal of the alter-ego liability and veil-piercing count of the complaint, to the extent it can be construed as asserting a theory of recovery against Strudthoff. We likewise affirm the trial court's dismissal of the portion of the complaint alleging "breach of warranty of quiet enjoyment and constructive eviction" against Strudthoff as he was not Ortho Savannah's landlord. See generally *George v. Hercules Real Estate Svcs.*, 339 Ga. App. 843, 849-852 (2) (795 SE2d 81) (2016).

The court properly dismissed the LLC's intentional infliction of emotional distress claim as well, because "business entities lack the cognizant ability to experience emotions." (Citation and punctuation omitted.) *Osprey Cove Real Estate v. Towerview Constr.*, Ga. App. (2) (Case No. A17A0653, decided October 27, 2017). Similarly, we affirm the dismissal of the invasion of privacy count as it is premised upon conduct which intruded "upon the Plaintiff's seclusion or solitude, or into its private affairs." See Restatement Second of Torts § 6521, comment a and c (indicating that "[t]he right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded" and that "[a] corporation, partnership or unincorporated association has no personal right of privacy"); *Meyer Technology Solutions v. Kaegem Corp.*, No. 17 C 281, 2017 U.S. Dist. LEXIS 166983 at *8 (N.D. Ill. 2017) ("corporations have no right to seclusion that is protected by tort law"). Nowhere in the complaint does Ortho Savannah assert any misappropriation of its name or likeness. Compare *Seki v. Groupon*, 333 Ga. App. 319, 324-326 (3) (775 SE2d 776) (2015) (reversing grant of summary judgment in case alleging invasion of privacy based upon misappropriation of a trade name).

With regard to the remaining theories of recovery, we cannot say that Strudthoff has demonstrated that Ortho Savannah "could not possibly introduce

7

evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." (Citation omitted.) *Singh*, 291 Ga. at 529 (3). Appellees' "proper remedy for seeking more particularity is by motion for a more definite statement . . . at the pleading stage or by the rules of discovery thereafter." *Cochran v. McCollum*, 233 Ga. 104, 105 (210 SE2d 13) (1974). "A trial court also has the inherent authority to order a more definite statement even in the absence of a motion filed by the defendant." *Renton v. Watson*, 319 Ga. App. 896, 902 (2), n. 3 (739 SE2d 19) (2013). Accordingly, we reverse the remainder of trial court's order granting Strudthoff's motion to dismiss.

2. Ortho Savannah asserts that the trial court erred by striking large portions of its complaint. "We review a trial court's decision on a motion to strike for an abuse of discretion. OCGA § 9-11-12 (f) provides that 'upon motion, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" (Citation and punctuation omitted.) *Stockbridge Dental Group v. Freeman*, 316 Ga. App. 274 (728 SE2d 871) (2012). "Generally, such motions to strike are not favored and should not be granted unless it is clear that the matter sought to be stricken can have no possible bearing upon the subject matter of the litigation." (Citation and punctuation omitted.) *Dept. of Transp. v. Taunton*,

217 Ga. App. 232, 233 (457 SE2d 570) (1995). "[I]f there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Northwestern Mut. Life Ins. Co. v. McGivern*, 132 Ga. App. 297, 302 (3) (208 SE2d 258) (1974).

Having reviewed the allegations at issue in this light, we affirm the portion of the trial court's order striking the following allegations: (1) the reference to Dr. Chappuis' drug use in Paragraph 7; (2) the reference to Dr. Chappuis "engaging in illegal behaviors (such as hiring prostitutes)" in Paragraph 27; and (3) the entirety of Paragraph 31, which relates to Dr. Chappuis' alleged alcohol and substance abuse. We reverse the remainder of the trial court's order striking other portions of Ortho Savannah's complaint as we cannot say these matters "can have no possible bearing upon the subject matter of [this] litigation." *Taunton*, supra, 217 Ga. App. at 233.

*Judgment affirmed in part and reversed in part. Dillard, C. J., and Ray, J., concur*.