305 Ga. 401
FINAL COPY

S18G0756.  CHAPPUIS et al. v. ORTHO SPORT & SPINE PHYSICIANS SAVANNAH, LLC.

NAHMIAS, Presiding Justice.

This case comes to our Court at an early stage of a lawsuit stemming from the contentious relationship of two former business partners.  The trial court struck 15 paragraphs of the plaintiff's complaint pursuant to OCGA § 9-11-12 (f), but the Court of Appeals reversed most of that order in Ortho Sport & Spine Physicians Savannah, LLC v. Chappuis, 344 Ga. App. 233 (808 SE2d 559) (2017). We granted a writ of certiorari to address how a trial court should evaluate a party's § 9-11-12 (f) motion to strike matter from a pleading on the ground that it is "scandalous."  As explained below, because the trial court in this case did not properly evaluate the defendants' motion to strike, and because that court should have the opportunity to properly exercise its discretion regarding the motion, we vacate the judgment of the Court of Appeals in part and remand with direction to vacate the trial court order and remand the case to

that court for analysis consistent with this opinion.

1. On August 3, 2015, Ortho Sport & Spine Physicians Savannah, LLC (Ortho Sport) filed a verified complaint in Fulton County Superior Court against defendants James Chappuis, M.D.; Chappuis Properties, LLC; Orthopaedic & Spine Surgery of Atlanta, LLC (OSSA); and Jordan Strudthoff.[1] Ortho Sport alleges the following basic facts in its complaint. Dr. Chappuis and Dr. Armin Oskouei were partners in a medical practice in Atlanta. In early 2014, their relationship deteriorated. Dr. Chappuis began threatening to kill Dr. Oskouei and hired people to stalk him and his staff. This conduct and the resulting business consequences were the subject of a lawsuit in Fulton County that ultimately settled.[2] Dr. Oskouei left Atlanta and started Ortho Sport in

---

[1] Strudthoff is apparently an employee of OSSA. In the trial court, he filed a motion to dismiss the complaint as to him, which the trial court granted. Ortho Sport also appealed that dismissal order to the Court of Appeals, which in Division 1 of its opinion affirmed the dismissal of some claims but reversed the dismissal of others. See Ortho Sport, 344 Ga. App. at 235. This Court did not grant certiorari to review those rulings, and neither party has raised any arguments relating to them.

[2] Although in its complaint Ortho Sport alleges only that the prior lawsuit was "amicably settled" after Dr. Chappuis admitted to engaging in the conduct alleged, both parties assert more specifics in their other filings. According to Ortho Sport, OSSA's chief financial officer "admitted to conspiring with Dr. Chappuis to get rid of Dr. Oskouei," Dr. Oskouei paid $10,000 to leave OSSA, and OSSA paid $150,000 to one of Dr. Oskouei's employees who was improperly terminated for racial reasons. The defendants agree that the settlement required Dr. Oskouei to pay $10,000 to OSSA and further assert that Dr. Oskouei was required to refrain from making certain unspecified statements about Dr. Chappuis.

Savannah. After about a year, Dr. Chappuis, through his company Chappuis Properties, LLC, bought the building in Savannah that Ortho Sport had been leasing. Dr. Chappuis and the other defendants began to harass Dr. Oskouei, his employees, and his patients. This included business-related harassment, such as refusing to accept rent payments and disparaging Ortho Sport to potential patients, as well as personal harassment, such as writing a racist message in the dust on Dr. Oskouei's vehicle. As a result, Ortho Sport vacated the leased property. Based on the defendants' conduct, Ortho Sport alleges claims of civil conspiracy, alter-ego liability and piercing the corporate veil, breach of warranty of quiet enjoyment and constructive eviction, intentional infliction of emotional distress, trespass, invasion of privacy, slander per se, slander and oral defamation, and tortious interference with business relations. The complaint also requests punitive damages and attorney fees.

On August 20, 2015, the defendants filed their answer along with a motion to strike Paragraphs 7, 17-28, and 31-32 of the complaint on the ground that those allegations are "redundant, immaterial, impertinent, or scandalous," citing OCGA § 9-11-12 (f). Paragraphs 7 and 31 allege that Dr. Chappuis has a history of drug and alcohol abuse, including performing a surgery while using

3

cocaine, and a history of violence, including threatening to kill Dr. Oskouei and his staff when they worked together in Atlanta. Paragraph 17 alleges that the defendants' actions in Savannah are reminiscent of Dr. Chappuis's harassing behavior in Atlanta. Paragraphs 18-20 allege that Dr. Chappuis is a known racist and left racist and sexual messages on Dr. Oskouei's vehicle and elsewhere, and that Dr. Chappuis systematically fired all African-Americans from his medical operations. Paragraphs 21-24 allege that the defendants are responsible for suspicious individuals disturbing Ortho Sport's employees by hanging around its lobby, soliciting its patients, telling patients not to use Ortho Sport, and inquiring about confidential business information. Paragraphs 25 and 26 allege that as Dr. Chappuis did in Atlanta, he has again hired people, this time including someone who impersonated a police officer, to stalk Dr. Oskouei in order to psychologically impair him and force him to abandon his business and to vacate his house and move to an undisclosed location. Paragraph 27 alleges that Dr. Chappuis has boasted "about having illicit 'connections' [and] engaging in illegal behaviors (such as hiring prostitutes), and would even bring fully automatic weapons to showcase within their medical practice." That paragraph further alleges that "[w]hen threatening Dr. Oskouei's life, Dr.

4

Chappuis, who is of Italian decent[sic], furiously asserted that 'you need to fear for your life, because you're going to meet the real Sicilian.'" Paragraphs 28 and 32 say that Ortho Sport takes Dr. Chappuis's threats seriously because of his past statements and history. Ortho Sport filed a response to the OCGA § 9-11-12 (f) motion, arguing that each of these allegations is relevant to its claims against the defendants.

Without a hearing and in a one-sentence order prepared by the defendants' counsel and containing no reasoning, the trial court struck in full all 15 of the disputed paragraphs. The trial court then granted Ortho Sport's request for a certificate of immediate review, and the Court of Appeals granted Ortho Sport's application for an interlocutory appeal.

In deciding the appeal, the Court of Appeals applied the following single standard to the entire motion to strike:

> "Generally, such motions to strike are not favored and should not be granted unless it is clear that the matter sought to be stricken can have no possible bearing upon the subject matter of the litigation." (Citation and punctuation omitted.) Dept. of Transp. v. Taunton, 217 Ga. App. 232, 233 (457 SE2d 570) (1995). "[I]f there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." Northwestern Mut. Life Ins. Co. v. McGivern, 132 Ga. App. 297, 302 (3) (208 SE2d 258) (1974).

5

Ortho Sport, 344 Ga. App. at 236-237. The Court of Appeals then reversed most of the trial court's order, concluding that most of the disputed paragraphs should not have been struck because the court could not say that they "'can have no possible bearing upon the subject matter of [this] litigation.'" Id. (quoting Taunton, 217 Ga. App. at 233). The Court of Appeals affirmed only the striking of: "(1) the reference to Dr. Chappuis' drug use in Paragraph 7; (2) the reference to Dr. Chappuis 'engaging in illegal behaviors (such as hiring prostitutes)' in Paragraph 27; and (3) the entirety of Paragraph 31, which relates to Dr. Chappuis' alleged alcohol and substance abuse." Id. at 237. The defendants petitioned this Court for a writ of certiorari, which we granted, asking whether the Court of Appeals erred in its review of the trial court's decision to strike "scandalous" matter from Ortho Sport's complaint.

2. OCGA § 9-11-12 (f) says:

Upon motion made by a party within 30 days after the service of the pleading upon him, or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

This Court has never addressed how trial courts should evaluate motions made under OCGA § 9-11-12 (f) to strike portions of pleadings as redundant,

6

immaterial, impertinent, or scandalous.[3]  Georgia's statutory civil practice rule

is modeled, however, on Federal Rule of Civil Procedure 12 (f), and "[w]e may

look to [Rule 12 (f)] and the Federal decisions thereunder, therefore, to aid us

in determining the purpose and meaning of [the Georgia] rule." McGivern, 132

Ga. App. at 301-302.  See also Community & Southern Bank v. Lovell, 302 Ga.

375, 377 n.6 (807 SE2 444) (2017); Ambler v. Archer, 230 Ga. 281, 287 (196

SE2d 858) (1973).[4]

---

[3]  This case involves a motion to strike matter only on those grounds; we do not address the part of OCGA § 9-11-12 (f) that deals with striking insufficient defenses.  We also do not address other civil practice rules and inherent judicial powers that may give the trial court discretion to strike matter from pleadings on other grounds, including, for example, evidentiary allegations that blatantly violate Rule 8's preference for "simple and plain" pleading.  Fed. R. Civ. P. 8; OCGA § 9-11-8.  See, e.g., Mitchell v. Hart, 41 FRD 138, 143 (S.D. N.Y. 1966).  See also 5C Arthur R. Miller et al., Federal Practice and Procedure     Civil § 1383 (3d ed. 2018).

[4]  When Georgia's Civil Practice Act was enacted in 1966, the federal rule said: "The Court may, upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by the rules, within 20 days after the service of the pleading upon him, or of its own initiative, at any time, order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Since then, the federal rule has been restyled and "20 days" has been changed to "21 days."  The only material difference between the state and federal rules is the deadline for a party to file the motion, which is not at issue in this case.

Federal cases interpreting Rule 12 (f) before 1966 carry the most weight in our analysis of OCGA § 9-11-12 (f), because they informed the understanding of the rule's language at the time our statute was enacted.  Federal cases decided after 1966 may still be persuasive, however, particularly if they apply the holdings of pre-1966 precedents, as do all of the post-1966 federal decisions cited as persuasive authority in this opinion.  It is worth noting, however, that most of the reported Rule 12 (f) decisions are from district courts rather than the federal courts of appeal.  That is because a ruling on a motion to strike matter from a pleading is interlocutory and not immediately appealable unless the trial court allows immediate review (as the trial court did in this case) or when the ruling can be raised in an interlocutory appeal of some other ruling; moreover, an order granting or denying a motion to strike rarely if ever has a demonstrable harmful effect on the ultimate judgment in the

In granting the petition for certiorari, this Court asked specifically about the "scandalous" category of OCGA § 9-11-12 (f). A significant number of federal cases have focused on the "scandalous" component of Rule 12 (f); drawing on those decisions, leading federal practice treatises define scandalous matter as "that which improperly casts a derogatory light on someone," 5C Arthur R. Miller et al., Federal Practice and Procedure — Civil § 1382 (3d ed. 2018) (hereinafter, Wright & Miller), and "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court," 2 Milton I. Shadur, Moore's Federal Practice — Civil § 12.37 [3] (3d ed. 2018) (hereinafter, Moore's Federal Practice). The Court of Appeals did not look to the federal decisions or treatises, however; in fact, the court did not conduct any distinct analysis as to whether any of Ortho Sport's allegations were scandalous, instead relying on two of that court's prior opinions that did not focus on whether the matter in question was scandalous. And the trial court order contained no

case, so Rule 12 (f) issues are not often seen in appeals from final judgments. Accordingly, we are seeking guidance mainly from cases showing how trial courts have exercised their discretion under Rule 12 (f); there are not many cases in which appellate courts have delineated the outer bounds of that discretion by reversing rulings on Rule 12 (f) motions.

analysis at all, much less specific analysis of the scandalous question. As explained below, we conclude that when an OCGA § 9-11-12 (f) motion specifically seeks the striking of scandalous matter from a pleading, the trial court must consider not only the "possible bearing" — potential relevance — of the allegation, but also the prejudice the allegation will cause.

(a) We begin by acknowledging that having one test as the *starting point* for reviewing OCGA § 9-11-12 (f) motions to strike is appropriate. Although the rule uses four different adjectives — redundant, immaterial, impertinent, and scandalous — it is well-accepted that "[t]hese four terms used were not intended to be mutually exclusive; there is a certain amount of overlapping between them, particularly the first three." McGivern, 132 Ga. App. at 302 (citing several federal cases). See also Schenley Distillers Corp. v. Renken, 34 FSupp. 678, 684 (E.D. S.C. 1940). And even the fourth term — scandalous — shares important points of commonality with its OCGA § 9-11-12 (f) compatriots.

A key point of overlap is the disfavored nature of these motions, whichever term is invoked. See McGivern, 132 Ga. App. at 302 ("Motions to strike alleged redundant, immaterial or impertinent or scandalous matter are not

9

favored." (citing the second edition of Moore's Federal Practice)); 5C Wright & Miller § 1382 ("[F]ederal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12 (f) motions to strike on any of these grounds are not favored."). One of the reasons these motions to strike are so disfavored is that they "'propose[ ] a drastic remedy.'" 2 Moore's Federal Practice § 12.37 [1] (citation omitted). See also <u>Stanbury Law Firm v. I.R.S.</u>, 221 F3d 1059, 1063 (8th Cir. 2000) ("[S]triking a party's pleadings is an extreme measure, and, as a result, we have previously held that 'motions to strike under Fed. R. Civ. P. 12 (f) are viewed with disfavor and are infrequently granted.'" (citation omitted)). Broadly striking allegations can completely eliminate a claim or defense, which is not a proper use of a motion to strike. See <u>Brown v. Joiner Intl., Inc.</u>, 523 FSupp. 333, 336 (S.D. Ga. 1981) ("Motions to strike cannot be used to determine disputed fact questions, nor can they be used to decide disputed and substantial questions of law, particularly where there is no showing of prejudice to the movant." (citation omitted)).

An important part of guarding against the improper use of motions to strike is ensuring that matter that is relevant to the litigation is not readily struck. The preservation of relevant allegations is generally required no matter which

10

§ 9-11-12 (f) term the movant invokes. As the treatises explain, this is why many federal courts have held that an allegation is "scandalous" under Rule 12 (f) only when it is not relevant to the case. See, e.g., 5C Wright & Miller § 1382 ("It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action."); 2 Moore's Federal Practice § 12.37 [3] ("[C]ourts will usually strike so-called scandalous material only if it is irrelevant and immaterial to the issues in controversy."). See also Black's Law Dictionary (10th ed. 2014) (defining "scandalous matter" as "[i]nformation that is improper in a court paper because it is both grossly disgraceful (or defamatory) and irrelevant to an action or defense").[5]

Moreover, motions to strike under OCGA § 9-11-12 (f) are usually filed at an early stage of civil litigation, and the nascent nature of the proceeding may make it difficult for the trial court to determine what matters are truly relevant (meaning that the court would find them to be relevant under the rules of

---

[5] Similarly, a "redundant" claim is not relevant because "it essentially repeats another claim in the same complaint." 2 Moore's Federal Practice § 12.37 [3]. And "[a]n allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." Id.

11

evidence in a trial of the case). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." Lipsky v. Commonwealth United Corp., 551 F2d 887, 893 (2d Cir. 1976). Accordingly, courts should not ordinarily "decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of pleading alone." Id. Relevance, which is a broad concept even in the trial context, see OCGA § 24-4-401,[6] is viewed even more liberally in the context of OCGA § 9-11-12 (f) motions. This expansive view of relevance (which might more accurately be called "potential relevance") has commonly been expressed using the "no possible bearing" test applied by the Court of Appeals: "Matter in pleadings will not be stricken unless it is clear that it can have no possible bearing upon the subject matter of the litigation, and if there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." McGivern, 132 Ga. App. at 302 (emphasis added). See also Ortho Sport, 344 Ga. App. at 236-237; Taunton, 217 Ga. App. at 233.

---

[6] OCGA § 24-4-401 says: "[T]he term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

McGivern adopted this test from the second edition of Moore's Federal Practice, and it has been echoed in many federal opinions. See, e.g., Buchholtz v. Renard, 188 FSupp. 888, 894 (S.D. N.Y. 1960); Local 793 UAW-CIO v. Auto Specialties Mfg. Co., 15 FRD 261, 266 (W.D. Mich. 1951). For examining the potential relevance of an allegation in a pleading, the test is appropriate. When ruling on a § 9-11-12 (f) motion to strike, however, there is another important consideration: what *prejudice* results from the allegation. This additional consideration has been referenced in the third (and current) edition of Moore's Federal Practice: "To prevail on [a] motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." 2 Moore's Federal Practice § 12.37 [3] (punctuation and footnote omitted). See also 5C Wright & Miller § 1382 ("[T]here appears to be general judicial agreement, as reflected in the extensive case law on the subject, that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." (footnote omitted)); Walmac Co. v. Isaacs, 15 FRD 344, 345

13

(D.R.I. 1954) (declining to grant a motion to strike because although the allegations were "not as 'simple, concise and direct' as artistic pleading would dictate," they "relate[d] to the controversy and . . . [the moving party] failed to show any prejudicial harm resulting to him from their inclusion in the complaint"); Kraus v. Gen. Motors Corp., 27 FSupp. 537, 541 (S.D. N.Y. 1939) ("Where no harm can come to the defendant, ordinarily the Court is very cautious about disturbing the pleading, unless the Court can clearly see that the allegations have no possible bearing upon the subject matter of the litigation.").

(b)     "'[A] motion to strike frequently has been denied when no prejudice could result from the challenged allegations, even though the matter literally is within the categories set forth in Rule 12 (f).'" All-Georgia Dev. v. Kadis, 178 Ga. App. 37, 39 (341 SE2d 885) (1986) (quoting 5C Wright & Miller § 1382). See also Tivoli Realty v. Paramount Pictures, 80 FSupp. 800, 803 (D. Del. 1948) ("Motions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12 (f) where there is no showing of prejudicial harm to the moving party."). But what about when prejudice *can* result? This question is crucial for allegedly scandalous matter, because the harmful nature of the material is the very reason for the motion to

strike. "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." 5C Wright & Miller § 1382. Moreover, allegations made in court pleadings that are "pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged[,]" and even if false and malicious, "they shall not be deemed libelous." OCGA § 51-5-8. See, e.g., Stewart v. Walton, 254 Ga. 81, 81 (326 SE2d 738) (1985). For these reasons, "the disfavored character of Rule 12 (f) [motions] is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations." 5C Wright & Miller § 1382.

The prejudicial effect of an allegation does not eliminate the guidepost that relevant matter normally should not be struck, which (as explained above) is common to all OCGA § 9-11-12 (f) motions, whichever of its four terms are invoked. See, e.g., Sirois v. East West Partners, Inc., 285 FSupp.3d 1152, 1162 n. 8 (D. Haw. 2018) (declining to strike allegations related to a sexual

15

harassment claim, noting that "courts regularly decline to strike from the record 'unpleasant' facts that are relevant to a cause of action or defense — and this is particularly true when those facts 'do not degrade (the) defendant's moral character any more than do the allegations themselves'" (citation omitted)); Nwakpuda v. Falley's, Inc., 14 FSupp.2d 1213, 1216 (D. Kan. 1998) ("Defendant's claim that plaintiff's allegations of race discrimination inject scandalous matter into the proceeding is without merit.  If the court characterized plaintiff's allegations of racial discrimination as scandalous, very few, if any, plaintiffs could state a claim under [42 USC §] 1981."); Gateway Bottling v. Dad's Rootbeer Co., 53 FRD 585, 588 (W.D. Pa. 1971) ("The facts here may be unpleasant for plaintiff to have on the record and they certainly contain charges of reprehensible conduct but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action or a defense. Such, for example, are the facts concerning a divorce for adultery.").

Whether to strike becomes a more difficult judgment, however, when a prejudicial allegation hovers near the sometimes thin line separating what is (or may turn out to be) relevant from what is not.  Unlike when ruling on a motion to strike based on the other three components of OCGA § 9-11-12 (f), in this

16

situation the trial court cannot rely as comfortably on the principle that it should err on the side of not striking, because a scandalous allegation left in place may cause significant harm. Accordingly, when matter in a pleading is targeted as "scandalous," the trial court must consider not only its relevance but also its prejudice. Here we return to the descriptions of scandalous matter set forth in Wright & Miller and Moore's Federal Practice, and we establish some parameters for Georgia courts to use in discerning whether an allegation "*improperly* casts a derogatory light on someone" or "*unnecessarily* reflects on the moral character of an individual."

To begin with, an allegation that has only a remote connection to a claim or defense but is highly prejudicial to the opposing party may be improperly and unnecessarily derogatory and therefore a good candidate for striking as scandalous. See, e.g., Anderson v. Davis Polk & Wardwell, LLP, 850 FSupp.2d 392, 417 (S.D. N.Y. 2012) (declining to strike as immaterial, impertinent, or scandalous allegations "regarding a purportedly homosexual colleague's wrongdoing" because they were relevant to the plaintiff's claims of sexual harassment, but striking allegations "regarding the sexual orientation of a partner at [his law firm], weekend rendezvous between attorneys at [the firm],

17

. . . and the consensual sexual activities of [firm] employees" as "so tangential to plaintiff's claims of workplace discrimination that evidence supporting them would not be admissible"); Morse v. Weingarten, 777 FSupp. 312, 319 (S.D. N.Y. 1991) (striking references to the defendant's criminal conviction and income level because those matters did not "bear[ ] remotely on the merits of this case . . . [and] serve[d] no purpose except to inflame the reader").

In this regard, the court may ask a party to provide more information to clarify why a challenged allegation may be relevant to the lawsuit in a way that is not apparent from the pleadings. The court should also consider how prejudicial the allegation is and how serious the danger of harm is. For example, "if the complaint will not be submitted to the jury, or if the case will be tried to the court, or if the pleadings will be subject to continuing 'judicial supervision,' there is less need to strike scandalous allegations." 5C Wright & Miller § 1382 (footnotes omitted). See also Lynch v. Southampton Animal Shelter Foundation, 278 FRD 55, 67 (E.D. N.Y. 2011) (reasoning that the motion to strike was less compelling because some of the statements that "may indeed be scandalous [and] inflammatory" were already made public through other means and the court's practice was to allow the jury to "see such allegations [only] if

18

the Court ultimately determines that they are relevant and admissible under the Federal Rules of Evidence").

In addition, the court should consider each disputed allegation in the context of the entire pleading and the entire lawsuit, taking into account the parties' general conduct and tone during the litigation as well as any other filings made. See, e.g., Anderson, 850 FSupp.2d at 417 ("[A]llegations regarding [a supervisor's] health and that of other women alongside whom plaintiff worked in the Managing Attorney's Office are wholly irrelevant to any of his claims, a fact that is clear from the manner in which plaintiff introduces these claims as taunting asides."); Carone v. Whalen, 121 FRD 231, 234 (M.D. Pa. 1988) (striking the entire complaint because "the disrespect and nefarious conduct illustrated by the Plaintiff in this matter" — for example, calling the Assistant United States Attorney a "sniveling, whining individual" — "is the culmination of a vengeful and vindictive temperament evident throughout [the Plaintiff's] pleadings").

The court may be surgical in its strikes, deleting certain words or phrases if part of an allegation that otherwise might be relevant is expressed "in repulsive language that detracts from the dignity of the court." 2 Moore's

Federal Practice § 12.37 [3]. See, e.g., <u>Alvarado-Morales v. Digital Equip. Corp.</u>, 843 F2d 613, 618 (1st Cir. 1988) (explaining that the terms "'concentration camp,' 'brainwash,' and 'torture' and such similes as 'Chinese communists in Korea'" used to describe the plaintiffs' experiences when they were pressured to resign and forgo unemployment compensation were properly struck because "these repugnant words replete with tragic historical connotations . . . are superfluous descriptions and not substantive elements of the cause of action"); <u>Hughes v. Kaiser Jeep Corp.</u>, 40 FRD 89, 93 (D.S.C. 1966) (striking from a complaint about an allegedly defectively manufactured car the characterization of it as a "death trap"). See also <u>Lipsky</u>, 551 F2d at 894 ("[I]f the [Rule 12 (f)] motion is granted at all, [it] should be pruned with care.").

Finally, the court may strike matters that do not prejudice a specific party but nonetheless impugn the dignity of the judicial process. See, e.g., <u>Conklin v. Anthou</u>, Case No. 1:10-CV-02501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011) (striking paragraphs from the complaint that were impertinent and "'improperly cast[ ] a derogatory light'" on the judge and other judicial officers (citation omitted)); <u>Atraqchi v. Williams</u>, 220 FRD 1, 3 (D.D.C. 2004) (striking

the plaintiffs' complaint and explaining that the court could not "allow to stand, as if it had some juridical value, a complaint that contains the wildly immaterial, delusional, and quite possibly pathological allegations" about various conspiracies against the plaintiffs by certain Christian denominations, the United States government, and "Black people").

(c)     Of course, the trial court is in the best position to evaluate all of these considerations. That is why decisions about OCGA § 9-11-12 (f) motions are entrusted to the broad discretion of the trial court. See Kadis, 178 Ga. App. at 39. See also Delta Consulting Group v. R. Randle Constr., 554 F3d 1133, 1141 (7th Cir. 2009) ("The court . . . has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter."). An appellate court ordinarily should not disturb the trial court's § 9-11-12 (f) decision so long as it is reasonable and not arbitrary. See, e.g., United States v. Ancient Coin Collectors Guild, 899 F3d 295, 324 (4th Cir. 2018).[7]

---

[7]  If an OCGA § 9-11-12 (f) motion to strike is granted, the losing party may amend its pleading (or, if necessary, the trial court may grant leave to amend the pleading) in a form that complies with the court's ruling, particularly if the deletion of the matter struck leaves the pleading unintelligible or obviously altered. See OCGA § 9-11-15 (a) ("A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires. . . ."). See also Delta Sigma Theta Sorority v. Bivins, Case No. 2:14-CV-147-FTM-38CM, 2015 WL 1827511, at *1 (M.D. Fla.

21

3.     Turning back to the circumstances of this case, because the trial court's order granting the defendants' OCGA § 9-11-12 (f) motion in its entirety was a one-sentence summary ruling issued without a hearing, it is unclear precisely what legal analysis the court employed.  But it seems clear that the court did not fully consider the issues raised by a motion to strike scandalous matter.  The trial court had no Georgia appellate precedent to follow, and neither the defendants nor Ortho Sport argued that the "scandalous" component of OCGA § 9-11-12 (f) required consideration different than that given the other components of the rule.  Instead, relying on the Court of Appeals' opinion in McGivern, Ortho Sport argued to the trial court that it should deny the motion unless it was clear that the allegations in dispute had no possible bearing on the case.  As explained above, to the extent the trial court was considering the defendants' motion to strike only in terms of redundant, immaterial, or impertinent matter, that would be the correct test.  But the extensive matter the court struck indicates that this was not the basis of the court's ruling.  For

Apr. 13, 2015) (acknowledging the parties' agreement about how to revise a scandalous paragraph in the complaint, granting the motion to strike that paragraph, and directing the plaintiff to file an amended complaint using the agreed-upon language); Atraqchi, 220 FRD at 3 (striking the complaint "with leave [for plaintiffs] to file a proper complaint, asserting a proper cause of action").

example, the allegations in Paragraphs 21-24 of the complaint — that the defendants are responsible for suspicious individuals disturbing Ortho Sport's employees by hanging around its lobby, soliciting its patients, telling patients not to use Ortho Sport, and inquiring about confidential business information — go to the heart of some of the plaintiff's claims, such as breach of warranty of quiet enjoyment and tortious interference with business relations.

The defendants, on the other hand, argued that "[w]here the materiality of the alleged matter is highly unlikely, or where its effect would be prejudicial, the Court may order it stricken," citing Ashe-Smith v. Hoskins, Case No. 1:11-CV-03390-JEC, 2014 WL 359825, at *3 (N.D. Ga. Feb. 3, 2014). Although some courts have framed the analysis in this way, the prevailing view, as discussed above, is that a court should not strike relevant matter solely because it is prejudicial.[8] The incorrect standard the defendants suggested may

---

[8] We also note that, despite their use of an "or" instead of an "and," indicating that prejudice alone might justify striking matter from a pleading, courts citing the Ashe-Smith formulation have not actually struck matter merely for being prejudicial. In fact, in Ashe-Smith, the moving party did not even assert that the matter it sought to strike was scandalous. See 2014 WL 359825, at *3 (striking the plaintiff's responses because they were "not among the types of pleading permitted under the Federal Rules [of Civil Procedure]," "add nothing of substance to her initial complaint," "offer legal conclusions," and "are thus variously redundant and immaterial"). See also, e.g., Velez v. Lisi, 164 FRD 165, 167 (S.D. N.Y. 1995) (declining to strike allegations that the defendants committed perjury and criminal misconduct because the allegations were related to the plaintiff's overall claim and the court could not say at that early stage that the allegations had no possible

23

have led the trial court to strike as much of the complaint as it did. For example, the allegations in Paragraphs 21-24 that defendants sent suspicious individuals to Ortho Sport to disturb patients and employees, which as just noted are directly relevant to the plaintiff's claims, certainly cast the defendants in a negative light.

What the trial court should have done — and what it is directed to do on remand — is address the defendants' motion to strike first by evaluating whether each challenged allegation is truly relevant to the case. Any allegation that is truly relevant generally should not be struck even if it causes prejudice, unless it is needlessly expressed in truly repulsive language (and even then the court should try to prune the allegation to leave as much of it as is proper). If an allegation's relevance is not apparent at this very early stage in the proceeding, the court should apply the more liberal "no possible bearing" test. See McGivern, 132 Ga. App. 302. Any allegation that has no possible bearing on the lawsuit may be struck (although it need not be struck if it is harmless).

---

bearing); Kent v. AVCO Corp., 815 FSupp. 67, 71 (D. Conn. 1992) (striking allegations because they "have no relevance to this case *and* their only effect is to prejudice the defendant" (emphasis added)); Reiter's Beer Distributors v. Christian Schmidt Brewing Co., 657 FSupp. 136, 145 (E.D. N.Y. 1987) (striking as improper and irrelevant prejudicial references to other litigation against the defendants).

24

The court should then take a closer look at the allegations that have a possible bearing and that raise prejudice concerns in light of the considerations discussed above, including evaluating how likely the possible bearing is and how prejudicial the allegation is.

Because the trial court has considerable discretion in deciding an OCGA § 9-11-12 (f) motion but did not apply the correct legal standards when exercising its discretion, we should give that court the opportunity to rule on the defendants' motion again using the legal standards set forth in this opinion. See Darling v. McLaughlin, 299 Ga. 106, 108 (786 SE2d 657) (2016) (remanding the case to the habeas court because that court analyzed only one of the two possible legal grounds for voluntary dismissal); State v. Pickett, 288 Ga. 674, 680 (706 SE2d 561) (2011) (concluding that because the trial court made significant legal errors and some factual errors in its order ruling on a speedy trial claim, "[t]he Court of Appeals . . . erred in affirming rather than vacating the trial court's judgment and remanding the case for the court to exercise its discretion again using properly-supported factual findings and the correct legal analysis").

Accordingly, we vacate Division 2 of the Court of Appeals' opinion and

25

remand the case to that court with instructions for it to vacate the trial court's order on the defendants' motion to strike and to remand the case to the trial court with direction to reconsider the motion consistent with the law set forth in this opinion.

Judgment vacated in part, and case remanded with direction. All the Justices concur.

Decided March 4, 2019.

Certiorari to the Court of Appeals of Georgia — 344 Ga. App. 233.

Dentons US, Thurbert E. Baker, Mark G. Trigg, Mark A. Silver, for appellants.

Heidari Power Law Group, Yasha Heidari, Yenniffer S. Delgado, for appellee.